Adam Siegler (State Bar No. 116233)
asiegler@sieglerlaw.com
William Sexton (State Bar No. 164929)
wsexton@sieglerlaw.com
SIEGLER LAW GROUP
9454 Wilshire Boulevard, Suite M-16
Beverly Hills, California 90212
Telephone: (310) 777-1111
Telecopy: (310) 777-1114

Attorneys for Defendants
Attorneys for Defendants
FILM BY HUMANS PRODUCTION COMPANY, LLC
and DUNCAN McGILLIVRAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

D STEVENS, INC., D. STEVENS, individually,

Plaintiff,

v.

FILM BY HUMANS PRODUCTION COMPANY, LLC; DUNCAN MCGILLIVRAY; and DOES 1 through 500, inclusive,

Defendants.

and related Counterclaim.

Case No. CV07-06806 GPS (AGRx)

**JOINT RULE 26(f) REPORT**

# JOINT REPORT PURSUANT TO RULE 26(f)

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure and Local Rule 26-1, an early meeting of counsel was held on February 11, 2008, between counsel for Plaintiff D STEVENS, INC. and D STEVENS INDIVIDUALLY (sometimes collectively referred to as "Plaintiff" for convenience), and Defendants FILM BY HUMANS PRODUCTION COMPANY, LLC and DUNCAN MCGILLIVRAY (sometimes collectively referred to as "Defendant" for convenience) submit the following initial disclosures.

## A. Short Synopsis of the Main Claims, Counterclaims and Affirmative Defenses

Plaintiffs' Statement

__________Beginning in May 2006, Plaintiff was induced to work intensely on pre-production activities relating to a film about the late recording artist, Marvin Gaye. Plaintiff D Stevens ("Mr. Stevens") was induced by Defendants to agree to be identified as Director of the film, and to devote himself to numerous activities relating to the film, including but not limited to script writing and revisions and other forms of creative input.

Defendants assured Mr. Stevens over and over that they believed Mr. Stevens was the "right" Director for this film. While giving such assurances, Defendants including Defendant Duncan McGillivray ("Mr. McGillivray") repeatedly held out Mr. McGillivray as an "expert" who had already independently gathered all necessary information concerning Mr. Stevens' abilities, qualifications and experience.

After getting Mr. Stevens to agree to direct the Marvin Gaye film, Defendants immediately tried to coordinate publicity about that film to an upcoming May 2006 Cannes Market presentation of Mr. Stevens' previous full-length feature film entitled "The Pet," which Mr. Stevens had previously written

and directed.

After inducing Mr. Stevens with compliments and numerous assurances to join the Marvin Gaye film project, Mr. McGillivray then unilaterally lengthened the development / pre-production phase of the film from approximately 2 months to 10 months, and indicated he expected Mr. Stevens and others to participate in an often daily flow of telephonic and email communications with him, and to otherwise devote themselves to the creative development of this project.

To maintain Mr. Stevens' involvement, creative input and continuing agreement to direct the film, Mr. McGillivray re-doubled his expressions of confidence in Mr. Stevens' abilities and qualifications, and induced Plaintiffs to enter into a written agreement dated October 13, 2006. It stated:

> "<u>If a distributor</u> that the Producer has approached <u>offers terms and conditions for a distribution deal</u> that do not include acceptance by the distributor of the Direct <u>and except for rejection of the Director by the distributor the distribution deal terms and conditions are otherwise acceptable to the Producer then the Producer and the distributor have the option of terminating the Director's participation in the project by paying to the Director a "buyout" fee of $250,000</u> and <u>this sum is payable within 28 days of the termination notice</u>. In this unlikely and unexpected scenario the Producer can enter into a distribution and production deal with a substitute Director if this buyout fee has been paid. Such a buyout fee would be paid by either the distributor and/or third party production investors."

(Written agreement dated October 13, 2006, para. 18.)

This written agreement described a single permissible "termination" scenario that Defendants represented was "unlikely and unexpected." It referred to the "termination" as being one in which "the Producer and the distributor" would jointly exercise "the option of terminating the Director's participation in the project." It conditioned that joint exercise of a "termination" option upon the payment of a "buyout" fee of $250,000 "within 28 days of the termination notice." (Written agreement dated October 13, 2006, para. 18.)

On April 11, 2007, Defendants purported to unilaterally terminate Plaintiff on April 11, 2007 in a transparent effort to try to deprive Plaintiffs of the benefit of the 28-day $250,000 buyout provision, and to otherwise damage and/or interfere with Plaintiffs' rights of recovery. Defendants have now just recently announced F. Gary Gray as new director.

There is now substantial evidence supporting a determination by the trier of fact that Defendants wilfully misled Plaintiffs. Each of the named Defendants should be held liable to Plaintiffs. Mr. McGillivray engaged in tortious conduct to advance his own individual economic and other interests. He must be held liable as an individual for all such and other wrongful conduct.

Plaintiffs brought this action reluctantly. Plaintiffs have asserted claims against Defendants under California law for fraud in the inducement, negligent misrepresentation in the inducement, breach of contract, fraud in the performance, negligent misrepresentation during the performance, unjust enrichment, violation of California business & Professions Code §§ 17200 et seq., intentional infliction of emotional distress, and declaratory relief.

Showing no particular hurry, Defendants removed this action to Federal Court without making any settlement offer of any kind. Since then, Defendants have counterclaimed for "rescission based on fraud" and for "declaratory relief."

Based on Defendants' recent "clarification" that their counterclaim

for "rescission based on fraud" was based solely on Mr. Stevens' alleged May 2006 misrepresentations that his previous film, entitled "The Pet," was going to be shown at the Cannes Film Festival, not the Cannes Market, it is clear there is no merit to the "rescission" counterclaim.

Press clippings and advertisements published in May 2006 support Plaintiffs' contention that Defendants knew "The Pet" was going to be shown in the Cannes Market, not the official Cannes Film Festival itself. Plaintiffs have also expressly alleged that affirmative defenses apply, including but not limited to estoppel, laches and waiver.

Defendants' Statement

Defendant FHPC's contentions are simple. The contract in question does not require any payment to Stevens unless and until the "Marvin Gaye" film project is funded by a distributor. That event has not occurred. FHPC further contends that Stevens is not qualified to direct the picture and that potential distributors will not agree to Stevens as the director of the film. Therefore, the contract should be rescinded.

Defendant McGillivray should not be individually named in this case, since the contract at issue is between Stevens and FHPC.

**B. Brief Description of Key Legal Issues**

Plaintiff's Statement

The key legal issues include the following:

(1) Did paragraph 18 of the written agreement dated October 13, 2006 provide that the only permissible "termination" was one jointly made by the Producer and a distributor that had actually made a complete offer acceptable to the Producer but for Plaintiff's involvement?

(2) Was the purported unilateral "termination" by Defendants of

Plaintiffs as Director in a written April 11, 2007 communication justified by paragraph 18 of the written agreement dated October 13, 2006? Is the interpretation by Defendants of paragraph 18 of the written contract dated October 13, 2006 reasonable and enforceable?

(3) Can Defendants avoid direct liability under the "joint termination" provisions of paragraph 18 of the written agreement dated October 13, 2006 by citing their wrongful pre-emptive April 11, 2006 "termination" when that "termination" did not conform to any of the requirements set forth in paragraph 18 of the written contract they are purportedly trying to enforce?

Defendants' Statement

The central legal issues in the case are the meaning, interpretation of the written contract.

**C. Realistic Range of Provable Damages**

Plaintiffs' Statement:

As to the Complaint, Plaintiffs contend that the realistic range of provable damages is over $1.5 million based on, among other things, various economic losses and damages in contract and in tort, out-of-pocket expenses, expenditures of time, losses of earnings from other projects, as well as damages recoverable relating to damage to reputation, fraud in the inducement, fraud in the performance, the incurring of attorneys fees and interest and costs, and Mr. Stevens' experiencing severe emotional distress. Some of the damages items will involve matters for expert opinion. Plaintiffs also seek the imposition of punitive damages.

Defendants' Statement:

As to the Counterclaim, FHPC contends that its ability to finance and

produce the film has been damaged by the association of Stevens with the project. This is a matter for expert opinion by an expert on motion picture production and finance.

**D. Whether There Is Insurance Coverage**

The parties are not aware of any insurance coverage which would apply to this case.

**E. Likelihood of Motions to Add Other Parties, File Amended Pleadings, or Transfer Venue**

The parties do not expect that additional parties will be named. However, Plaintiffs reserve the right to amend their complaint and affirmative defenses to the counterclaim, and to amend to add additional defendants.

With regard to the pleadings, Defendants plan to amend their Answer and Counterclaim, to add certain affirmative defenses and clarify the basis for the damages sought in the counterclaim.

At present, there are no plans to change the venue. If it should develop that the preponderance of the witnesses are in Arizona, and if Arizona law were held to apply to the contract, then a change of venue might be appropriate. Plaintiffs oppose any change of venue at this time.

**F. Discovery And Experts**

**1. Rule 26(a)(1) Disclosures**

The Rule 26 Disclosures were exchanged on February 1 and 4, 2008.

**2. Subjects on Which Discovery May Be Needed**

Plaintiff's Statement

Plaintiff will seek information concerning the bases of the allegations in the pleadings. Those issues will include, without limitation, issues concerning

the extent to which Defendants actually believed their representations were true and had reason to do so. They will also include discovery about the qualifications and experience of Mr. McGillivray, and his involvement in other projects as to which Mr. McGillivray may have similarly made misrepresentations about his expertise in the film industry. For nearly a year, Mr. McGillivray held himself out as basically being essentially an expert who was confident that Mr. Stevens could make the film about Marvin Gaye both an artistic and commercial success, and he is now apparently denying that knew information about Mr. Stevens as of May 2006 which Mr. McGillivray undisputedly knew about.

Plaintiffs also specifically point out that they will seek to perform discovery regarding Defendants' affirmative claims that Mr. Stevens' involvement has damaged their ability get the film made. Defendants are going to have to show that, but for Mr. Stevens' attachment to the project as Director, a distribution deal for this film would have already have been entered into, but they have admitted they have never received any offer to date that even meets the barest of requirements of the provisions of paragraph 18 of the written agreement dated October 13, 2006, which among other things provided:

> "If a distributor that the Producer has approached offers terms and conditions for a distribution deal that do not include acceptance by the distributor of the Direct and except for rejection of the Director by the distributor the distribution deal terms and conditions are otherwise acceptable to the Producer then the Producer and the distributor have the option of terminating the Director's participation . . . ."

(Written agreement dated October 13, 2006, para. 18.)

Plaintiffs have no desire to disrupt any pending negotiations, and are willing to agree to take reasonable steps to minimize any real risk of damaging any actual,

pending negotiations. As a matter of fundamental fairness and Due Process, however, Plaintiffs are entitled to perform discovery. Here, Defendants are affirmatively seeking to recover damages, and to date have refused to withdraw any counterclaim that has been asserted, which are obviously going to require evidence regarding the status of pending negotiations and intentions of third parties.

Defendants' Statement

Defendant will provide information as to past negotiations, but objects to providing information as to any pending negotiations, on the ground that they contain confidential, proprietary information and trade secrets, that Stevens would attempt to interfere with the negotiations, and that, in any event, the intrusion of discovery requests would prevent FHPC from conducting any meaningful negotiations in the future. In that case, no production of the film would ever occur, FHPC would become insolvent and the case would be essentially moot.

Defendants will seek discovery as to the qualifications and experience of D Stevens and the activities averred in his Complaint, as well as the circumstances surrounding Stevens' claim that he was an entrant at the Cannes Film Festival, as opposed to the Cannes Film Market.

**3. Phased Discovery, Limitations on Discovery, and Number of Depositions**

Joint Statement:

Counsel for the parties are in agreement that phased discovery involving preliminary, partial depositions of Mr. McGillivray and Mr. Stevens would facilitate a new round of settlement discussions.

Plaintiffs' Further Statement:

Plaintiffs remain willing to consider any reasonable settlement offer made by Defendants on their own behalf relating to the allegations made against them based on their own alleged wrongful misconduct. If the matter is not resolved promptly, Plaintiffs estimate approximately 11 economically-taken depositions will be needed to develop the case for motions, settlement and trial. One of the reasons why Plaintiffs believe the number of depositions required is roughly double the number estimated by Defendants is that Defendants are enjoying the carte blanche freedom of interviewing everybody affiliated with the film project, while simultaneously warning Plaintiffs and Plaintiffs' counsel that they are somehow prohibited from doing the same, claiming it would constitute either an interference with the film project or an improper contact by counsel. Plaintiffs are entitled to depose those witnesses or at least formally interview them. Plaintiffs have received conflicting information from various sources about a number of material issues.

Defendants' Further Statement:

Defendants estimate that depositions of Mr. Stevens, Mr. McGillivray, and fewer than 5 key witnesses, will be sufficient to develop the case for motions or settlement. Defendants are concerned that neither party has the resources to depose the 20 or more persons listed in the Early Disclosures.

**4. Other Orders**

No other orders are sought at this time.

**5. Proposed Time of Expert Witness Disclosures under F. R. Civ. P. 26(a)(2)**

The parties would propose that expert witness disclosures be made 90 days prior to trial, or at such later date as the Court may order. Due to the expense of the expert process, the parties hope to complete non-expert discovery and

conduct settlement negotiations before incurring the additional expense.

**G. Issues That May Be Resolved on Motion for Summary Judgment or Motion In Limine**

Plaintiffs' position:

Plaintiffs presently plan to make a motion for partial summary judgment as to the counterclaim of "rescission based on fraud." Plaintiffs have documents that are believed to show that the "rescission" counterclaim is totally meritless and unsupported by any facts. Plaintiffs contend that Defendants knew from the outset all of the true facts that they now claim were misrepresented to them by Plaintiffs. Plaintiffs reserve the right to move the Court for partial summary judgment as to any counterclaim for "interference" which may be added to the counterclaim by way amendment. Also, regarding the "interference" issue, Plaintiffs reserve the right to bring motions in limine at trial to preclude Defendants, their counsel and their witnesses from to any "interference" by Plaintiffs.

Defendants' position:

Defendants believe that it is likely that many or all of the claims in the Complaint would be appropriate for summary judgment or motion in limine. In particular, the interpretation of the contract is a matter of law.

**H. Settlement Discussions**

The parties have informally discussed settlement but no structure for an agreement has been reached. The parties would prefer Settlement Procedure No. 1, subject to the availability of the Court or Magistrate.

**I. Estimate of Length of Trial/Number of Witnesses**

Plaintiffs believe that the case can and should be tried in

approximately 12 days, with approximately 11 witnesses for Plaintiffs and approximately 2 testifying experts for Plaintiffs.

Defendants believe that the case can and should be tried within 3 days, with approximately 6 witnesses and 1 testifying expert per side.

**J.     Presumptive Schedule of Trial Dates**

A presumptive schedule is attached as Exhibit A.

**K.     Other Issues Affecting the Status or Management of the Case**

Plaintiffs' position:

This case is appropriate for prompt resolution because of the financial predicament in which Defendants have placed Mr. Stevens, and due to the limitation of Plaintiffs' resources.  Defendants have given indications they have funding.  Plaintiffs' efforts to preserve and assert their rights should be enforced promptly by the Court.

Defendants' position:

This case is appropriate for prompt resolution because the resources on both sides are limited, and the film will never be made if Stevens is associated with the project and if the litigation continues.

**L.     Identification of All Subsidiaries, Parents, and Affiliates**

D Stevens Inc. does not have any subsidiary, parent or affiliate companies.  Mr. Stevens is a principal of D Stevens Inc.

FHPC does not have any subsidiary, parent or affiliate companies. Duncan McGillivray is a principal in FHPC.

**M.     Patent Cases**

Not applicable.

**N. Option for Magistrate Judge to Preside**

The parties are agreeable to Option 1, that the Magistrate Judge preside over the settlement conference.

Respectfully submitted,

BRENTWOOD LEGAL SERVICES LLP

Dated: February ___, 2008

By: ______________________________
Alan D. Shewell, Esq.

Attorneys for Plaintiff
D STEVENS, INC., D STEVENS, INDIVIDUALLY

Dated: February___, 2008

SIEGLER LAW GROUP

By: ______________________________
Adam Siegler, Esq.

Attorneys for Defendants
FILM BY HUMANS PRODUCTION COMPANY, LLC; DUNCAN MCGILLIVRAY